1  TIMOTHY J. MAIER, ESQ.
   (Va. State Bar No. 46254)
2  (*Pro Hac Vice* to be submitted)
   SIDDHESH V. PANDIT, ESQ.
3  (Va. Bar No. 75686)
   (*Pro Hac Vice* to be submitted)
4  MAIER & MAIER, PLLC
   345 South Patrick Street
5  Alexandria, VA 22314
   Telephone:  (703) 740-8322
6  Email: tjm@maierandmaier.com
   Email: svp@maierandmaier.com
7
   STACY E. DON (Cal. State Bar No. 226737)
8  LAW OFFICE OF STACY E. DON
   3500 Douglas Blvd., Suite 210
9  Roseville, CA  95661-4227
   Telephone:  (916) 749-4851
10 Email:        sdon@sdonlaw.com

11 Attorneys for Defendants
   Hikam America, Inc.,
12 Hikam Electrónica De México, S.A. De C.V.,
   Hikam Tecnologia De Sinaloa,
13 Hewtech Philippines Corp.,
   Hewtech Philippines Electornics Corp.,
14 and Hewtech (Shenzhen) Electronics Co., Ltd.,

15

16                 UNITED STATES DISTRICT COURT

17              SOUTHERN DISTRICT OF CALIFORNIA

18

19 SHOALS TECHNOLOGIES GROUP,        CASE NO. 3:23-cv-00811-AGS-MSB
   LLC,
20                                   **DECLARATION OF SIDDHESH V.**
              Plaintiff,             **PANDIT, ESQ. IN SUPPORT OF**
21                                   **DEFENDANTS' UNOPPOSED**
          v.                         **MOTION FOR A MANDATORY**
22                                   **STAY UNDER 28 U.S.C. § 1659**
   HIKAM AMERICA, INC.,
23 HIKAM ELECTRONICA DE
   MÉXICO, S.A. DE C.V.,             DEMAND FOR JURY TRIAL
24 HIKAM TECNOLOGIA DE
   SINALOA,
25 HEWTECH PHILIPPINES CORP.,        Judge:  Hon. Andrew G. Schopler
   HEWTECH PHILIPPINES               Courtroom: 5C
26 ELECTORNICS CORP.,                Hearing Date: August 11, 2023
   AND HEWTECH (SHENZHEN)            Hearing Time: 2:00 PM
27 ELECTRONICS CO., LTD.,

28            Defendant.

   ─────────────────────────────────────────

        DECLARATION OF SIDDHESH V. PANDIT, ESQ. ISO DEFENDANTS'
   UNOPPOSED MOTION FOR A MANDATORY STAY UNDER 28 U.S.C. § 1659
                      CASE NO. 3:23-cv-00811-AGS-MSB

1    I, Siddhesh V. Pandit, Esq., declare and state as follows:

2    1.    I am a partner at Maier and Maier PLLC, and counsel of record for

3    Hikam America, Inc., Hikam Electrónica de México, S.A. de C.V., Hikam

4    Tecnologia de Sinaloa, Hewtech Philippines Corp., Hewtech Philippines Electronics

5    Corp., and Hewtech (Shenzhen) Electronics Co., Ltd. (collectively the "Hikam

6    Defendants" or "Defendants"). I have personal knowledge of the facts stated herein

7    and, if called as a witness, I could and would testify as to the following.

8    2.    Attached hereto as Exhibit A is a true and correct copy of the May 4,

9    2023 Complaint under §337 of the Tariff Act filed by Plaintiff Shoals Technologies

10   Group, LLC before the United States International Trade Commission ("ITC"),

11   excluding the accompanying exhibits.

12   3.    Attached hereto as Exhibit B is a true and correct copy of the Federal

13   Register, Vol. 887, No. 111, in which the ITC published its Notice of Investigation

14   instituting *Certain Photovoltaic Connectors and Components Thereof*, Inv. No. 337-

15   TA-1365.

16   4.    I conferred by email with Charles Barquist, counsel for Plaintiff Shoals

17   Technologies Group, LLC. Mr. Barquist confirmed that Plaintiff does not oppose

18   the motion to stay.

19   I declare under penalty of perjury that, to the best of my knowledge, the

20   foregoing is true and correct.

21   Dated: June 29, 2023

22

23   s/ Siddhesh V. Pandit
     Siddhesh V. Pandit

24   Email: svp@maierandmaier.com

25

26

27

28

                                        1
     DECLARATION OF SIDDHESH V. PANDIT, ESQ. ISO DEFENDANTS'
     UNOPPOSED MOTION FOR A MANDATORY STAY UNDER 28 U.S.C. § 1659
     CASE NO. 3:23-cv-00811-AGS-MSB

# TABLE OF CONTENTS

| Exhibit | Document Title | Page Number |
|---|---|---|
| A | May 4, 2023 Complaint under §337 of the Tariff Act filed by Plaintiff Shoals Technologies Group, LLC before the United States International Trade Commission ("ITC"), excluding the accompanying exhibits. | 1 |
| B | Federal Register, Vol. 887, No. 111, in which the ITC published its Notice of Investigation instituting *Certain Photovoltaic Connectors and Components Thereof*, Inv. No. 337-TA-1365 | 39 |

DECLARATION OF SIDDHESH V. PANDIT, ESQ. ISO DEFENDANTS'
UNOPPOSED MOTION FOR A MANDATORY STAY UNDER 28 U.S.C. § 1659
CASE NO. 3:23-cv-00811-AGS-MSB

# Exhibit A

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN PHOTOVOLTAIC CONNECTORS AND COMPONENTS THEREOF** | **Investigation No. 337-TA-____** |

**VERIFIED COMPLAINT**
**UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED**

**Complainant:**

**Shoals Technologies Group, LLC**
1400 Shoals Way
Portland, Tennessee 37148
(615) 451-1400

**Counsel for Complainant**
Kirk Harris
Eric Maschoff
**MASCHOFF BRENNAN**
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
(801) 297-1850

Charles S. Barquist
**MASCHOFF BRENNAN**
1801 Century Park East, Suite 2400
Los Angeles, California 90071
(949) 202-1900

Saloni Mathur
**MASCHOFF BRENNAN**
100 Spectrum Center Drive, Suite1200
Irvine, California 92618
(949) 202-1900

Daniel E. Yonan
**STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.**
1100 New York Ave, NW, Suite 600
Washington, D.C. 20005
(202) 772-8899

**Proposed Respondents:**

**Hikam America, Inc.**
3521 Main St. # 501
Chula Vista, CA  91911
Telephone: 619-420-0333

**Hikam Electrónica de México, S.A. de C.V.**
Carretera A San Luis No. Km. 10.5
Las Californias Industrial Park
Mexicali, Baja California 21394
Mexico
Telephone: +52 686 561 6524

**Hikam Tecnologia de Sinaloa**
International Road Guasave
Los Mochis No. Km. 2.5 Industrial Zone
Guasave, Sinaloa 81149
México
Telephone:  +52 687 872 4083

**Hewtech Philippines Corp.**
Lot C2-9, Carmelray Industrial Park II
Laguna
4027 Philippines
Telephone: +63 49 508 2301

**Hewtech Philippines Electronics Corp.**
TECO Industrial Park
Ninoy Aquino Highway
Bundagul Mabalacat, Pampanga
2010 Philippines
Telephone: +63 999 457 9677

2

**Hewtech (Shenzhen) Electronics Co., Ltd.**
Block 5 and Block 6, 172 Hengpailing Estate
Wu Tong Shan, Luo Hu District
Shenzhen
518114 China
Telephone: +86 755 2548 0178

**Voltage, LLC**
450 Raleigh Rd., Ste 208
Chapel Hill, NC 27517
Telephone: (919) 391-9405

**Ningbo Voltage Smart Production Co.**
No 201 Bldg. 5 (14) Miaofengshan Rd
Beilun District
57020 Ningbo, China

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    THE PARTIES ................................................................................................... 4

     A.    The Complainant ................................................................................... 4

     B.    The Proposed Respondents ................................................................... 6

          1.    Hikam America, Inc. ................................................................... 6

          2.    Hikam Electrónica de México, S.A. de C.V. ............................. 6

          3.    Hikam Tecnologia de Sinaloa, S.A. de C.V. ............................ 7

          4.    Hewtech (Shenzhen) Electronics Co., Ltd. ............................... 7

          5.    Hewtech Philippines Corp. ........................................................ 7

          6.    Hewtech Philippines Electronics Corp. ..................................... 8

          7.    Voltage, LLC ............................................................................. 8

          8.    Ningbo Voltage Smart Production Co. ...................................... 9

III.   THE ASSERTED PATENTS ............................................................................. 9

     A.    The '739 Patent ..................................................................................... 9

     B.    The '254 Patent ................................................................................... 10

IV.   NON-TECHNICAL DESCRIPTIONS OF THE ASSERTED PATENTS ..................... 11

     A.    The '739 Patent ................................................................................... 11

     B.    The '254 Patent ................................................................................... 11

V.    THE ACCUSED PRODUCTS ........................................................................... 12

VI.   PROPOSED RESPONDENTS' UNLAWFUL AND UNFAIR ACTS—PATENT
     INFRINGEMENT ........................................................................................... 13

     A.    Importation and Sale .......................................................................... 13

          1.    The Hikam Respondents ......................................................... 13

          2.    The Voltage Respondents ....................................................... 14

B.      Infringement ............................................................................................. 15

    1.      Direct Infringement - Hikam ................................................................. 16

    2.      Direct Infringement - Voltage ............................................................... 16

    3.      Indirect Infringement ............................................................................ 17

(a)     The Hikam Respondents ................................................................................. 17

(b)     The Voltage Respondents ............................................................................... 19

VII.    HARMONIZED TARIFF SCHEDULE ............................................................... 21

VIII.   THE DOMESTIC INDUSTRY ............................................................................ 21

A.      A Domestic Industry Exists in the United States for Shoals' DI Products ........... 21

    1.      Investment in Plant and Equipment ........................................................ 22

    2.      Investment in Employment of Labor and Capital .................................... 25

    3.      Investment in Engineering, Research, and Development ......................... 26

IX.     RELATED LITIGATION .................................................................................... 27

X.      REQUESTED RELIEF......................................................................................... 28

**EXHIBIT LIST**

| Exhibit No | Description |
| --- | --- |
| Exhibit 1 | Certified Copy of U.S. Patent No. 10,553,739 |
| Exhibit 2 | Certified Copy of U.S. Patent No. 10,992,254 |
| Exhibit 3 | Exemplary Photograph 1 of DI Product (Shoals In-Line Fuse) |
| Exhibit 4 | Exemplary Photograph 2 of DI Product (Shoals In-Line Fuse) |
| Exhibit 5 | Exemplary Photograph 3 of DI Product (Shoals In-Line Fuse Undermold) |
| Exhibit 6 | Exemplary Photograph 4 of DI Product (Shoals In-Line Fuse Overmold) |
| Exhibit 7 | Exemplary Photograph 5 of DI Product (Shoals Cable with In-Line Fuse) |
| Exhibit 8 | Exemplary Photograph 6 of DI Product (Shoals Big Lead Assembly ("BLA")) |
| Exhibit 9 | Exemplary Photograph 7 of DI Product (Shoals BLA Installation) |
| Exhibit 10 | Exemplary Photograph 8 of DI Product (Shoals BLA Undermold) |
| Exhibit 11 | Exemplary Photograph 9 of DI Product (Shoals BLA Overmold) |
| Exhibit 12 | Website screenshot showing Principal Place of Business of Hikam America, Inc. |
| Exhibit 13 | Hirakawa Hewtech Corp. website screenshot showing History of Hikam and Hewtech Entities |
| Exhibit 14 | Website screenshot showing Principal Place of Business of Hikam Electrónica de México, S.A. de C.V. |
| Exhibit 15 | Website screenshot showing Principal Place of Business of Hikam Tecnologia de Sinaloa, S.A. de C.V. |
| Exhibit 16 | Proof of Principal Place of Business of Hewtech (Shenzhen) Electronics Co., Ltd. |
| Exhibit 17 | Proof of Principal Place of Business of Hewtech Philippines Corp. |
| Exhibit 18 | Proof of Principal Place of Business of Hewtech Philippines Electronics Corp. |
| Exhibit 19 | Proof of Principal Place of Business of Voltage, LLC |
| Exhibit 20 | Proof of Principal Place of Business of Ningbo Voltage Smart Production Co. |
| Exhibit 21 | Certified Copy of Assignment of the '739 Patent |
| Exhibit 22 | Certified Copy of Assignment of the '254 Patent |
| Exhibit 23 | Photograph 1 of Accused Product (Hikam Wire Harness incorporating In-Line Fuse) |
| Exhibit 24 | Photograph 2 of Accused Product (Hikam In-Line Fuse) |
| Exhibit 25 | Photograph 3 of Accused Product (Voltage In-Line Fuse) |
| Exhibit 26 | Photograph 4 of Accused Product (Voltage Harness incorporating In-Line Fuse) |
| Exhibit 27 | Photograph 5 of Accused Product (Voltage LYNX Trunk Bus incorporating In-Line Fuse) |
| Exhibit 28 | Photograph 6 of Accused Product (Voltage LYNX Trunk Bus) |
| Exhibit 29 | Import Records Regarding Hikam |
| Exhibit 30 | Hikam Email with attached Photographs Showing Hikam Import Information |
| Exhibit 31 | Hikam Website: Products Page |
| Exhibit 32 | Hikam Website: Factories Page |
| Exhibit 33 | Import Records Regarding Voltage String Harness |
| Exhibit 34 | Import Records Regarding Voltage LYNX Trunk Bus |

| Exhibit 35 | Voltage Website: LYNX Trunk Bus Page |
|---|---|
| Exhibit 36 | Voltage Website: String Harness Page |
| Exhibit 37 | Voltage Website: Projects Page |
| Exhibit 38 | Voltage Website: About Page |
| Exhibit 39 | Exemplary Chart 1 Showing Infringement of the '739 Patent by the Hikam Accused Products |
| Exhibit 40 | Exemplary Chart 2 Showing Infringement of the '739 Patent by the Hikam Accused Products |
| Exhibit 41 | Hikam LinkedIn Page Cited in Exhibits 39–40 |
| Exhibit 42 | Hikam Product Catalog Cited in Exhibits 39–40 |
| | |
| Exhibit 43 | Exemplary Photograph 1 of Internal Structure of Hikam Accused Products |
| Exhibit 44 | Exemplary Photograph 2 of Internal Structure of Hikam Accused Products |
| Exhibit 45 | Exemplary Photograph 3 of Internal Structure of Hikam Accused Products |
| Exhibit 46 | Exemplary Chart 1 Showing Infringement of the '739 Patent by the Voltage Accused Products |
| Exhibit 47 | Exemplary Chart 2 Showing Infringement of the '739 Patent by the Voltage Accused Products |
| Exhibit 48 | Voltage Website: Main Page Cited in Exhibits 46–47 |
| Exhibit 49 | Voltage Website: Products Page Cited in Exhibit 46 |
| Exhibit 50 | Exemplary Chart 1 Showing Infringement of the '254 Patent by the Voltage Accused Products |
| Exhibit 51 | Voltage Product Catalog Cited in Exhibit 50 |
| Exhibit 52 | Voltage Patent Application Publication No. 2023/0027228 A1 Cited in Exhibit 50 |
| Exhibit 53 | Exemplary Photograph 1 of Internal Structure of Voltage Trunk Bus |
| Exhibit 54 | Exemplary Chart 1 Showing that Shoals' DI Products Practice Claim 1 of the '739 Patent |
| Exhibit 55 | Exemplary Chart 2 Showing that Shoals' DI Products Practice Claim 1 of the '739 Patent |
| Exhibit 56 | Exemplary Chart 1 Showing that Shoals' DI Products Practice Claim 1 of the '254 Patent |
| Exhibit 57 | Globe Newswire Article Cited in Exhibit 56 |
| Exhibit 58 | Shoals Big Lead Assembly (BLA) Data Sheet Cited in Exhibit 56 |
| Confidential Exhibit 59C | Confidential Declaration of Dominic Bardos |

## APPENDIX LIST

| Appendix | Description |
|---|---|
| A | Certified Copy of the File History of the '254 Patent |
| B | References Cited in the Certified File History of the '254 Patent |
| C | Certified Copy of the File History of the '739 Patent |
| D | References Cited in the Certified File History of the '739 Patent |

## I.      INTRODUCTION

1.      Shoals Technologies Group, LLC ("Shoals" or "Complainant") brings this Complaint under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, based on the Proposed Respondents' unlawful importation into the United States, sale for importation into the United States, and sale within the United States after importation of certain photovoltaic connectors and components thereof ("Accused Products") that infringe certain claims of U.S. Patent No. 10,553,739 ("'739 Patent") and U.S. Patent No. 10,992,254 ("'254 Patent") (collectively "Asserted Patents"). Shoals owns, by assignment, all right, title, and interest in and to the Asserted Patents. Certified copies of the Asserted Patents accompany this Complaint as **Exhibits 1** and **2**.

2.      Shoals was founded in 1996 by Dean Solon, the inventor of the Asserted Patents and Shoals' former President and CEO. Shoals is a leading provider of electrical balance of system, or "EBOS," solutions for solar energy projects, primarily in the United States. EBOS encompasses components that are necessary to carry electric current produced by solar panels to an inverter and ultimately to a power grid. All of Shoals' products are manufactured in plants in Tennessee, Alabama and California. Shoals' domestic industry products are all manufactured in facilities located in Tennessee. Shoals' products are sold principally to engineering, procurement, and construction firms that build solar energy projects. Shoals has also begun to offer its EBOS products in the market for electric vehicle charging systems.

3.      The Asserted Patents are generally directed to improved connectors for solar panel arrays. Connectors that embody the patented inventions offer significant savings to the developer of a solar installation because they reduce or eliminate the need for combiner boxes, reduce the amount of wire and other materials needed, and substantially reduce the labor costs for installation. The claimed connectors are less expensive to manufacture and transport than the

prior art alternatives, are easy to use, and permit a more simplified component configuration in the solar field. One embodiment, specifically an in-line fuse from the '739 Patent, is illustrated below:



4.     Additional embodiments of an improved connector, specifically lead assemblies from the '254 Patent, are illustrated below.



FIG. 5

FIG. 6

2

5.     Per 19 U.S.C. § 1337(a)(2)–(3), Shoals has an established domestic industry for its products that employ the technology protected by the Asserted Patents ("DI Products"). The DI Products that practice the '739 Patent are component harnesses that comprise in-line fuses. Exemplary photographs of the in-line fuses accompany this Complaint as **Exhibits 3–7.** The DI Products that practice the '254 Patent include Shoals' Big Lead Assembly ("BLA") harnesses and the EV-BLA harness. Exemplary photographs of the BLA harness accompany this Complaint as **Exhibits 8–11.**

6.     Shoals' DI Products are entirely invented, designed, developed, engineered, prototyped, manufactured, tested, warehoused, and supported in the United States. Shoals has made and continues to make significant investments in plant and equipment and has employed and continues to employ significant labor and capital in its domestic activities related to the DI Products. Shoals also continues to support and grow its domestic industry with continuing investments in areas such as research and development of new and improved products and advances in manufacturing of the DI Products, and customer support.

7.     The Proposed Respondents import, sell for importation, and/or sell in the United States after importation the Accused Products. These products include:

a.   With respect to the '739 Patent:  Hikam's Wire Harnesses that include one or more in-line fuses, and Replacement In-Line Fuse (RILF) Kit, and Voltage's In-Line Fuse and String Harnesses that include one or more in-line fuses, and

b.  With respect to the '254 Patent:  Voltage's LYNX Trunk Bus.

8.     The Asserted Claims are listed in the table below for the '739 Patent and '254 Patent.

| Asserted Patent | Asserted Claims[1] |
|---|---|
| '739 Patent | **1**, 2–9, **10**, 11-13, **15**, 16–18 |
| '254 Patent | **1**, 2-6, **7**, 8–13, **14**, 15 |

9.       Shoals seeks as relief: (i) a permanent limited exclusion order under 19 U.S.C. § 1337(d) barring from entry into the United States Proposed Respondents' Accused Products that infringe one or more of the Asserted Patents; (ii) a permanent cease-and-desist order under 19 U.S.C. § 1337(f) prohibiting Proposed Respondents and/or their affiliates, subsidiaries, related companies, agents, successors, and assigns from conducting any of the following activities in the United States in relation to Accused Products that infringe one or more claims of the Asserted Patents: importing, marketing, distributing, selling, offering for sale,  licensing, advertising, transferring, or otherwise using, and soliciting or aiding and abetting others in such conduct; (iii) a bond during the 60-day Presidential review period pursuant to 19 U.S.C. § 1337(j) to prevent further injury to the domestic industry related to the Asserted Patents; and (iv) any other relief deemed appropriate by the Commission.

## II.     THE PARTIES

### A.     The Complainant

10.      Shoals is a limited liability company duly organized and existing under the laws of Tennessee with its principal place of business located at 1400 Shoals Way, Portland, Tennessee 37148.

11.      Shoals was founded in 1996 in Alabama. Shoals is built on a foundation of American ingenuity, with manufacturing facilities in Portland, Tennessee, Muscle Shoals, Alabama, and Poway, California. In 2008, Shoals acquired its first facility in Tennessee. In 2012

---

[1] Independent claims are in bold.

Shoals acquired a second plant in Tennessee, and in 2022 opened its newest plant, also in Tennessee. Shoals acquired its plant in California through its purchase of ConnectPV in August 2021. Since its founding, Shoals has had an unwavering commitment to quality, reliability, and safety in the products it develops and delivers for its customers. As a tier-1 supplier to the solar, energy storage, and eMobility sectors, Shoals' commitment to sustainability and responsible business practices is foundational to the company.

12.     Shoals is a leading provider of EBOS solutions for solar energy projects in the United States. EBOS encompasses all of the components that are necessary to carry the electric current produced by solar panels to an inverter and ultimately to the power grid. EBOS components are mission-critical products. Substantially all of Shoals' 2022 revenue was derived from its U.S. customers, and historically a majority of its revenue is derived from customers in the U.S.

13.     Shoals is a technological leader in the field of EBOS solutions and one of the industry's top innovators. Shoals maintains its position as one of the top innovators in the industry by making substantial investments in the research, development, and acquisition of cutting-edge technologies. Shoals is constantly innovating to find new ways to make EBOS safer and more reliable, while also less expensive and easier to install and maintain. Shoals' innovations, including in particular the inventions claimed in the Asserted Patents, also increase efficiency by reducing energy loss in solar installations. Many of Shoals' technological innovations, products, and concepts are protected by Shoals' valuable intellectual-property portfolio, which includes more than 20 issued United States patents and many pending patent applications. Shoals' BLA product, which is protected by the '254 Patent, won first prize in the Balance of Systems category in *PV Magazine's* 2019 awards (https://www.pv-

magazine.com/magazine-archive/pv-magazine-annual-awards/) (*PV Magazine* is the leading

global solar photovoltaic ("PV") trade magazine).

**B.     The Proposed Respondents**

**1.     *Hikam America, Inc.***

14.     On information and belief, Hikam America, Inc. ("Hikam") is a California

corporation, specializing in the business of photovoltaic cable solutions. Its headquarters and

principal place of business is located at 3521 Main Street, # 501, Chula Vista, California 91911.

(*See* **Exhibit 12**). Hikam was founded in 1988 by its parent company in Japan, Hirakawa

Hewtech Corporation. (*See* **Exhibit 13** at 2).

15.     The Hikam Accused Products are wire harnesses that include one or more in-line

fuses, and in-line fuse kits. On information and belief, Hikam has sold, imported, and distributed,

and continues to sell, import, and distribute the Hikam Accused Products in the United States.

On information and belief, the Hikam Accused Products are manufactured and/or assembled for

Hikam by one or more of its affiliates, including proposed Respondents Hikam Electrónica de

México, Hikam Tecnologia de Sinaloa, Hewtech (Shenzhen) Electronics Co., Ltd., Hewtech

Philippines Corp. and Hewtech Philippines Electronics Corp. (collectively, together with Hikam

America, Inc., the "Hikam Respondents.") (*See* **Exhibit 13** at 2 and 5).

**2.     *Hikam Electrónica de México, S.A. de C.V.***

16.     Hikam Electrónica de México, S.A. de C.V. ("Hikam Electrónica") was

established by its parent company Hirakawa Hewtech Corporation in 1988 as a manufacturing

company of Hikam America Inc, and operates a factory in Mexicali, Baja California, Mexico.

(*See* **Exhibit 13** at 2; *see also* **Exhibit 14**). Hikam Electrónica is in the business of the

manufacture, import and export of electrical and electronic cables, including the Hikam Accused

Products. (*See* **Exhibit 13** at 2).

6

13

17.     On information and belief, Hikam Electrónica has sold, imported, and distributed, and continues to sell, import, and distribute the Hikam Accused Products into the United States.

### 3.     *Hikam Tecnologia de Sinaloa, S.A. de C.V.*

18.     Hikam Tecnologia de Sinaloa, S.A. de C.V. ("Hikam Tecnologia") was established in 2001 as a manufacturing company by its parent Hirakawa Hewtech Corporation, and operates a factory in Guasave, Sinaloa, Mexico. (*See* **Exhibit 13** at 3; *see also* **Exhibit 15**).

19.     On information and belief, Hikam Tecnologia has sold, imported, and distributed, and continues to sell, import, and distribute the Hikam Accused Products into the United States.

### 4.     *Hewtech (Shenzhen) Electronics Co., Ltd.*

20.     On information and belief, Hewtech (Shenzhen) Electronics Co., Ltd. ("Hewtech Shenzhen") manufactures and/or exports to the United States the Hikam Accused Products. Hewtech Shenzhen was established in China by its parent company Hirakawa Hewtech Corporation in 2013. (*See* **Exhibit 13** at 5). Hewtech Shenzhen is located at Block 5 and Block 6, 172 Hengpailing Estate, Wu Tong Shan, Luo Hu District, Shenzhen, 518114 China. (*See* **Exhibit 16** at 2).

21.     On information and belief, Hewtech Shenzhen has sold, imported, and distributed, and continues to sell, import, and distribute the Hikam Accused Products into the United States.

### 5.     *Hewtech Philippines Corp.*

22.     On information and belief, Hewtech Philippines Corp. ("Hewtech Philippines") manufactures and/or exports to the United States the Hikam Accused Products. Hewtech Philippines was established by its parent company Hirakawa Hewtech Corporation in 2011. (*See* **Exhibit 13** at 5). Hewtech Philippines is located at LOT C2-9, Carmelray Industrial Park II, Laguna, 4027 Philippines. (*See* **Exhibit 17**).

23.     On information and belief, Hewtech Philippines has sold, imported, and distributed, and continues to sell, import, and distribute the Hikam Accused Products into the United States.

### 6.     *Hewtech Philippines Electronics Corp.*

24.     On information and belief, Hewtech Philippines Electronics Corp. ("Hewtech Electronics") is a manufacturing company specialized in assembly, sub-assembly of various types of cables, power supply cords, tubes and wire harness, including the Hikam Accused Products, and exports those products to the United States. Hewtech Electronics was established by its parent company Hirakawa Hewtech Corporation in 2019. (*See* **Exhibit 13** at 5). It is located at TECO Industrial Park, Ninoy Aquino Highway, Bundagul Mabalacat, Pampanga, 2010 Philippines. (*See* **Exhibit 18**).

25.     On information and belief, Hewtech Electronics has sold, imported, and distributed, and continues to sell, import, and distribute the Hikam Accused Products into the United States.

26.     None of the Hikam Respondents is licensed to either of the Asserted Patents.

### 7.     *Voltage, LLC*

27.     On information and belief, Voltage, LLC ("Voltage") is a limited liability company incorporated under the laws of North Carolina, specializing in the business of EBOS solutions and services in the renewable energy sector. Its headquarters and principal place of business is located at 1450 Raleigh Road, Chapel Hill, NC 27517. (*See* **Exhibit 19** at 2).

28.     The Voltage Accused Products are string harnesses that include one or more in-line fuses, in line fuse kits, and the LYNX Trunk Bus. On information and belief, the Accused Products are manufactured by and/or on behalf of Voltage in China, including by Ningbo Voltage Smart Production Co. in Ningbo, China. On information and belief, Voltage has sold,

imported, and distributed, and continues to sell, import, and distribute the Voltage Accused Products into the United States.

### 8.      *Ningbo Voltage Smart Production Co.*

29.      On information and belief, Ningbo Voltage Smart Production Co. ("Ningbo Voltage" and together with Voltage, LLC, the "Voltage Respondents") is a manufacturing company that manufactures and exports to the United States the Voltage Accused Products. Ningbo Voltage is located at No. 201 Bldg. 5 (14) Miaofengshan Rd., Beilun District, 57020 Ningbo, China. (*See* **Exhibit 20** at 1).

30.      On information and belief, Ningbo Voltage has sold and imported, and continues to sell and import, the Voltage Accused Products into the United States.

31.      Neither of the Voltage Respondents is licensed to either of the Asserted Patents.

## III.      THE ASSERTED PATENTS

### A.      The '739 Patent

32.      On February 4, 2020, the USPTO duly and lawfully issued the '739 Patent, entitled "Photovoltaic In Line Fuse Connector Assembly Having An Integral Fuse," to inventor Dean Solon. The '739 Patent issued from United States Application No. 14/295,132, filed on June 3, 2014, and claims priority to U.S. Provisional Patent Application No. 61/830,284, filed on June 3, 2013. The '739 Patent expires on December 29, 2034.

33.      The '739 Patent has 18 claims, including 3 independent claims and 15 dependent claims. The first maintenance fee for the '739 Patent will not be due until February 4, 2024.

34.      Pursuant to Commission Rule 210.12(c), a certified copy of the File History of the '739 Patent is included as **Appendix A.** Copies of the references cited in the certified file history of the '739 Patent are included as **Appendix B.**

35.     Shoals is the assignee of all rights, title, and interest in and to the '739 Patent. A certified copy of the assignment record of the '739 Patent is attached hereto as **Exhibit 21.**

36.     There are no foreign patents, patent applications, or any other foreign patent counterparts, as described in 19 C.F.R. § 210.12(a)(9)(v), corresponding to the '739 Patent.

37.     The '739 Patent has not been licensed.

**B.      The '254 Patent**

38.     On April 27, 2021, the United States Patent and Trademark Office duly and lawfully issued the '254 Patent, entitled "Lead Assembly For Connecting Solar Panel Arrays To Inverter," to inventor Dean Solon. The '254 Patent was issued from United States Application No. 14/849,458, filed on September 9, 2015, and claims priority to U.S. Provisional Patent Application No. 62/739,773, filed on September 9, 2014. The '254 Patent expires on September 9, 2035.

39.     The '254 Patent as asserted in this Complaint has 15 claims, including 3 independent claim and 12 dependent claims. The first maintenance fee for the '254 Patent will not be due until April 27, 2025.

40.     Pursuant to Commission Rule 210.12(c), a certified copy of the File History of the '254 Patent is included as **Appendix C.** Copies of the references cited in the certified File History of the '254 Patent are included as **Appendix D.**

41.     Shoals is the assignee of all right, title, and interest in and to the '254 Patent. A certified copy of the assignment record of the '254 Patent is attached hereto as **Exhibit 22.**

42.     There are no foreign patents, patent applications, or any other foreign patent counterparts, as described in 19 C.F.R. § 210.12(a)(9)(v), corresponding to the '254 Patent.

43.     The '254 Patent has not been licensed.

IV.     **NON-TECHNICAL DESCRIPTIONS OF THE ASSERTED PATENTS**

A.     **The '739 Patent**

44.     The following non-technical description of the patented technology is provided solely for compliance with the Commission Rules. It is not intended to, and does not, limit, define, or otherwise affect the construction and/or application of each patent's claim language and should not be understood to do so.

45.     The '739 Patent is directed to a photovoltaic in line connector assembly that has an integral fuse, and is double molded to provide electrical insulation, UV protection, strain relief, impact resistance and thermal stability. The innovative undermold and overmold structure, in particular, surrounds and seals the fuse to provide environmental protection reducing the risk of moisture infiltration. The assembly can be integrated with, or added to, a wiring harness for a photovoltaic installation, thereby providing one fuse per solar panel. The assembly may include zero, one, or two connectors that are male, female, or one of each. The invention's integration of a fuse has the advantage of moving circuit protection from a combiner box to the wiring harness, thereby reducing the number of combiner boxes required in a solar field and permitting a more simplified component configuration.

B.     **The '254 Patent**

46.     The following non-technical description of the patented technology is provided solely for compliance with the Commission Rules. It is not intended to, and does not, limit, define, or otherwise affect the construction and/or application of the '254 Patent's claim language and should not be understood to do so.

47.     The '254 Patent is directed to a lead assembly that includes a plurality of drop lines joined to a feeder cable at joints.  The drop line and feeder cable are electrically connected at a nexus that may be secured by a compression lug, soldering, splicing, crimping, or

11

combinations thereof. The nexus is surrounded by an undermold that surrounds, seals, and fully

encases the nexus, and an overmold surrounds the undermold, resulting in a profoundly durable

assembly resistant to environmental factors. In use, each drop line is connected to a solar array,

and the feeder cable is connected to an inverter. In this manner a plurality of solar arrays is

electrically coupled together, with a common feeder cable connecting them all to the inverter. A

system embodying the invention of the '254 Patent eliminates the need for combiner boxes

which are conventionally employed directly upstream of the inverter, and significantly reduces

the amount of wire needed for a solar installation; elimination of combiner boxes as permitted by

the invention of the '254 Patent results in a system that is safer, more reliable, less expensive,

and easier to install and maintain.

## V.    THE ACCUSED PRODUCTS

48.    Pursuant to Commission Rule 210.12(a)(12), the Accused Products can plainly be

described as certain photovoltaic connectors and components thereof, including photovoltaic

wire harnesses or string harnesses that contain one or more in-line fuses, in-line fuse kits, and

assemblies for connecting solar panel arrays to an inverter, which assemblies are called lead

assemblies or trunk buses, and which may also include one or more in-line fuses.

49.    Exemplary photographs of the Hikam Accused Products accompany this

Complaint as **Exhibits 23–24.**

50.    Exemplary photographs of the Voltage Accused Products accompany this

Complaint as **Exhibits 25–28.** [2]

---

[2] Shoals reserves the right to identify additional categories of products if it learns of such
products through discovery or other means.

## VI. PROPOSED RESPONDENTS' UNLAWFUL AND UNFAIR ACTS—PATENT INFRINGEMENT

### A. Importation and Sale

#### 1. *The Hikam Respondents*

51.     On information and belief, the Hikam Accused Products are or have been manufactured by and/or on behalf of Hikam in Mexico, the Philippines, and/or China, and imported and/or sold for importation into the United States by or for Hikam. On information and belief, the Hikam Accused Products then are or have been imported into and used, sold and offered for sale in the United States after importation by Hikam. (*See* **Exhibits 29–30**).

52.     Specifically, on information and belief, Hikam imports, sells and/or offers to sell the Hikam Accused Products for importation into the United States. The Hikam Accused Products are offered for sale on Hikam's website. (*See* **Exhibit 31** at 1–10). In Hikam's product catalog Hikam states that its "certified manufacturing facilities are based in Mexicali and Guasave, Mexico, with our sister factory (Hewtech Shenzhen) in Shenzhen, China." (*See* **Exhibit 42** at 5). In that catalog, posted on its website, Hikam touts its "three decades of experience as a turnkey manufacturer of wiring harnesses, and 6 years of specialized experience with Solar Harness Assemblies." On its website Hikam further states that "Our two Japanese-disciplined manufacturing facilities HIKAM Electrónica  de México (Mexicali, Baja California. México)" and "HIKAM Tecnologia de Sinaloa (Guasave, Sinaloa. México) made it possible for us to provide very competitive and high quality products for virtually every industry." (*See* **Exhibit 32** at 1–3). Nothing on the Hikam website or in its catalog mentions any manufacturing facility or capability in the United States. And importation records show that Hikam imports its "wire harnesses" from Mexico, the Philippines, and China; the "wire harnesses" offered in Hikam's website and catalog are harnesses that include in-line fuses as indicated by the

information provided for "in-line fuse rating." (*See* **Exhibits 29,31 at 1-6, & 42 at 2-3**). Hikam has also sold wire harnesses imported from Mexico to ConnectPV, a company that was acquired by Shoals in August 2021. In connection with one of those transactions, Hikam Electrónica provided an email that attached photographs of its wire harnesses (the FS6 model) packed into boxes labeled "MADE IN MEXICO". (*See* **Exhibit 30**).

### 2.    *The Voltage Respondents*

53.    On information and belief, the Voltage Accused Products are or have been manufactured by and/or on behalf of Voltage abroad and imported and/or sold for importation into the United States by Voltage. On information and belief, the Voltage Accused Products then are or have been imported into and used, sold and offered for sale in the United States after importation by Voltage. (*See* **Exhibits 33–34**). Exhibit 33 shows importation of "harness" products shipped by Ningbo Voltage Smart Production Co. or Voltage Intelligent Manufacturing from China to Voltage, LLC at various locations in the United States. The harnesses described on the Voltage website include in-line fuses, as seen in the photographs.  (*See* **Exhibit 36** at 1-2). Exhibit 34 shows importation of "trunk bus" products shipped by Ningbo Voltage Smart Production Co. or Voltage Intelligent Manufacturing from China to Voltage, LLC at various locations in the United States. The only "trunk bus" described on the Voltage website is the LYNX Trunk Bus, which includes in-line fuses, as seen in the photographs. (*See* **Exhibit 35** at 2).

54.    Specifically, on information and belief, Voltage imports, sells and/or offers to sell the Accused Products for importation into the United States. The Voltage Accused Products are offered for sale on Voltage's website. (*See* **Exhibits 35–36**). On information and belief, the Voltage Accused Products are manufactured by and/or on behalf of Voltage in China, including at its affiliate Ningbo Voltage Smart Production Co. in Ningbo, China. (*See* **Exhibits 33–34**).

14

Nothing on the Voltage website or in its catalog mentions any manufacturing facility or capability in the United States.

55.     On information and belief, Voltage uses, sells, and/or offers for sale in the United States the Accused Products after they are imported. Voltage's website identifies projects for which it delivered "solutions" in Rosamond, California, Pueblo, Colorado, Coolidge, Arizona, Okeechobee County, Florida, and Bainbridge, Georgia. (*See* **Exhibit 37** at 1). On information and belief, Voltage Accused Products have been sold for and installed in multiple solar installations in the United States, including installations of Voltage customers Moss Solar of Fort Lauderdale, Florida, Strata Clean Energy LLC of Durham, North Carolina, and LPL Solar LLC of Fort Lauderdale, Florida. And additional public information shows that Voltage also continues to sell and offers to sell the Accused Products within the United States; for example, Voltage states on its website that it is a "*nationwide* provider of utility scale wire (solar, EBOS) solutions." (*See* **Exhibit 38** at 1 (emphasis added)).

**B.     Infringement**

56.     On information and belief, both Voltage and Hikam manufacture or have manufactured their respective Accused Products outside the United States, and import or have imported and sold them for importation into the United States in violation of Section 337. On further information and belief, both Voltage and Hikam import and/or sell their respective Accused Products in the United States after importation in violation of Section 337.

57.     The chart below details the claims of the Asserted Patents that Shoals asserts against each Proposed Respondent:

| **Proposed Respondent** | **'739 Patent Claims** | **'254 Patent Claims** |
|---|---|---|

| Hikam Respondents | **1**, 2–9, **10**, 11–13, **15**, 16–18 | n/a |
| Voltage Respondents | **1**, 2–9, **10**, 11–13, **15**, 16–18 | **1**, 2–6, **7**, 8–13, **14**, 15 |

### 1.    *Direct Infringement - Hikam*

58.    The Hikam Accused Products directly infringe one or more of claims 1, 2–13, and 15–18 of the '739 Patent, either literally or under the doctrine of equivalents, in violation of 19 U.S.C. § 1337(a)(1)(B)(i), based on examination of an exemplar Hikam product and publicly available product information concerning the Hikam Accused Products. Claim-infringement charts that apply claims 1, 10, and 15 to representative infringing Hikam Accused Products are attached as **Exhibits 39–40.** Exemplary photographs showing the internal structure of the Hikam Accused Products are attached as **Exhibits 43–45.**

### 2.    *Direct Infringement - Voltage*

59.    Certain Voltage Accused Products, specifically the Voltage In-Line Fuse and String Harness, directly infringe one or more of claims 1, 2–13, and 15–18 of the '739 Patent, either literally or under the doctrine of equivalents, in violation of 19 U.S.C. § 1337(a)(1)(B)(i), based on publicly available product information concerning the Voltage Accused Products. Claim-infringement charts that apply claims 1, 10, and 15 to representative infringing Voltage Accused Products are attached as **Exhibits 46–47.**

60.    Certain Voltage Accused Products, specifically the Voltage LYNX Trunk Bus, directly infringe on or more of claims 1 through 15 of the '254 Patent, either literally or under the doctrine of equivalents, in violation of 19 U.S.C. § 1337(a)(1)(B)(i), based on publicly available product information, along with the inspection and analysis of the Voltage LYNX Trunk Bus. A claim-infringement chart that applies claims 1, 7, and 14 to a representative

16

infringing Voltage Accused Product is attached as **Exhibit 50.** An exemplary photograph showing the interior structure of the Voltage LYNX Trunk Bus is attached as **Exhibit 53.**

61.     In addition, all versions of the Voltage LYNX Trunk Bus that incorporate an in-line fuse infringe the '739 Patent for the same reasons that the Voltage In-Line Fuse and String Harness infringe.

### 3.     *Indirect Infringement*

62.     The Proposed Respondents have induced and continue to induce others to infringe one or more of the Asserted Claims under 35 U.S.C. § 271(b), literally or under the doctrine of equivalents, by selling for importation into the United States, importing, and selling after importation the Accused Products and encouraging and facilitating their customers and others to use and perform actions using those Accused Products that Proposed Respondents know will infringe and with the specific intent that performance of the actions will infringe.

### (a)     *The Hikam Respondents*

63.     The Hikam Respondents had notice of the '739 Patent at least as early as May 4, 2023—the filing date of Shoals' Complaint for Patent Infringement in the United States District Court for the Southern District of California. Based on publicly available product literature, along with the inspection and analysis of the Hikam Accused Products, the Hikam Respondents indirectly infringe one or more of claims 1, 2–13, and 15–18 of the '739 Patent, as shown in the exemplary charts attached as Exhibits 39–40.

64.     On information and belief, Hikam has induced and continues to induce its suppliers and/or customers to infringe the '739 Patent by the manufacture, use, sale, offer for sale, and importation of the Hikam Accused Products. For example, Hikam, on information and belief, actively and knowingly instructs its suppliers, including without limitation one or more of proposed respondents Hikam Electrónica, Hikam Tecnologia, Hewtech Philippines and/or

Hewtech Electronics, to manufacture the Accused Products on its behalf, which are then purchased, imported, and sold domestically in the United States by Hikam. In addition, Hikam, on information and belief, actively and knowingly instructs its customers to use, sell, and offer to sell the Hikam Accused Products in the United States.

65.     On information and belief, Hikam actively encourages, promotes, distributes, provides instructions for, and supports the assembly and use of the imported Hikam Accused Products in a way that directly infringes one or more claims of the '739 Patent, knowing and intending that others including its customers will commit infringing acts in such a manner as to directly infringe one or more of the Asserted Claims.

66.     On information and belief, the Hikam Accused Products are sold to customers and used by them pursuant to Hikam's instructions so as to infringe one or more of the Asserted Claims. The Accused Products have no substantial purpose other than to be assembled and used in a manner that infringes one or more of the Asserted Claims of the '739 Patent.

67.     On information and belief, the Hikam Respondents also contribute to the infringement of the Asserted Claims under 35 U.S.C. § 271(c) by their manufacture, importation, sale for importation, and/or sale in the United States after importation of one or more components of the Hikam Accused Products. The Hikam Respondents have knowledge of the '739 Patent and are aware that their imported components are designed for a combination that infringes one or more of the Asserted Claims, and are not staple articles of commerce suitable for substantial non-infringing use.

68.     The Hikam Respondents' importation, sale for importation, and sale in the United States after importation of the Hikam Accused Products are continuing. Further, the Hikam Respondents continue to distribute product literature and website materials encouraging their

18

25

customers and others to use their products in the customary and intended manner that infringes the '739 Patent. Thus, the Hikam Respondents contribute to and induce the infringement of the '739 Patent.

### (b)      The Voltage Respondents

69.      On information and belief, the Voltage Respondents have had actual knowledge of the Asserted Patents since at least July 21, 2022 as a result of Voltage's investigation and monitoring of Shoals patents issued by the United States Patent and Trademark Office. For example, in Voltage's pending Patent Application Publication No. 2023/0027228 A1, filed July 21, 2022, Voltage filed an Information Disclosure Statement by Applicant citing the '254 Patent. In addition, the Voltage Respondents had notice of the '739 and '254 Patents at least as early as May 4, 2023—the filing date of Shoals' Complaint for Patent Infringement in the United States District Court for the Middle District of North Carolina. Based on publicly available product literature, along with the inspection and analysis of exemplar Voltage Accused Products, the Voltage Respondents, indirectly infringe one or more of claims 1, 2–13, and 15–18 of the '739 Patent and one or more of claims 1 through 15 of the '254 Patent, as shown in the exemplary charts attached as Exhibits 46–47 and 50.

70.      On information and belief, the Voltage Respondents have induced and continue to induce their suppliers and/or customers to infringe the '739 and '254 Patents by the manufacture, use, sale, offer for sale, and importation of the Voltage Accused Products. For example, Voltage, on information and belief, actively and knowingly instructs its suppliers, including without limitation proposed respondent Ningbo Voltage, to manufacture the Voltage Accused Products, which are then purchased, imported, and sold domestically in the United States by Voltage. In addition, the Voltage Respondents, on information and belief, actively and knowingly instruct their customers to use, sell, and offer to sell the Voltage Accused Products in the United States.

19

71.     The Voltage Respondents actively encourage, promote, distribute, provide instructions for, and support the assembly and use of the imported Voltage Accused Products in a way that directly infringes the '739 and '254 Patents, knowing and intending that their customers will commit infringing acts in such a manner as to directly infringe one or more of the Asserted Claims.

72.     On information and belief, the Voltage Accused Products are sold to customers and used by them pursuant to Voltage's instructions so as to infringe one or more of the Asserted Claims. The Voltage Accused Products have no substantial purpose other than to be assembled and used in a manner that infringes the Asserted Claims of the '739 and '254 Patents.

73.     On information and belief, the Voltage Respondents also contribute to the infringement of the Asserted Claims under 35 U.S.C. § 271(c) by their manufacture, importation, sale for importation, and/or sale in the United States after importation of one or more components of the Voltage Accused Products. The Voltage Respondents have knowledge of the Asserted Patents and are aware that their imported components are designed for a combination that infringes one or more of the Asserted Claims, and are not staple articles of commerce suitable for substantial non-infringing use.

74.     The Voltage Respondents' importation, sale for importation, and sale in the United States after importation of the Voltage Accused Products are continuing. Further, the Voltage Respondents continue to distribute product literature and website materials encouraging their customers and others to use their products in the customary and intended manner that infringes the '739 and '254 Patents. Thus, the Voltage Respondents contribute to and induce the infringement of the '739 and '254 Patents.

20

27

## VII.   HARMONIZED TARIFF SCHEDULE

75.     On information and belief, the infringing Accused Products may fall within at least the following of the United States Harmonized Tariff Schedule: 8544.30.99; and 8544.60.12.90. These HTS numbers are illustrative only and not intended to limit the scope of the investigation.

## VIII.   THE DOMESTIC INDUSTRY

76.     A domestic industry, as defined by 19 U.S.C. §§ 1337(a)(2) and (a)(3), exists in the United States for Shoals' DI Products.

### A.     Technical Prong

77.     Shoals' domestic industry products employ the technology protected by the Asserted Patents. The DI Products that practice the '739 Patent are wire harnesses that comprise in-line fuses. The DI Products that practice the '254 Patent include Shoals' Big Lead Assembly ("BLA") harnesses and the EV-BLA harness.

78.     The DI Products practice one or more claims of the Asserted Patents in the United States. Per Commission Rule 210.12(a)(9)(ix), claim charts applying exemplary claim 1 of the '739 Patent and exemplary claim 1 of the '254 Patent to representative DI Products are attached as **Exhibits 54–56**.

### B.     Economic Prong

79.     Shoals has made significant investments in plant and equipment, and labor and capital, and has made substantial investments in engineering, research, and development, related to its DI Products. **Confidential Exhibit 59C** is a declaration that further describes and provides details regarding Shoals' activities and investments as to its DI Products.

### 1.    *Investment in Plant and Equipment*

80.    The DI Products are designed, developed, prototyped, and tested in Shoals'

Portland, Tennessee facilities by Tennessee-based Shoals employees. The DI Products are

manufactured in Shoals' factories in Portland, Tennessee. Shoals has made significant

investments in research, development and engineering facilities, manufacturing facilities and

equipment, warehouse space, and product-testing facilities equipment to support the DI Products.

(**Confidential Exhibit 59C).**

81.    Shoals' investments in plant and equipment related to the Domestic Industry

Products are substantial. Most of the DI Products are manufactured in Plant 1, located in

Portland, Tennessee, which also includes warehouse space for the raw materials and finished

goods for the DI Products and administrative offices. (**Confidential Exhibit 59C**, ¶ 15). Below

is an aerial photograph of Plant 1.



*Shoals Plant 1*

82.     Shoals has made substantial investments in manufacturing machinery and equipment and facilities in Plant 1, attributable to the manufacture of both the '739 DI Products and '254 DI Products. Shoals has made substantial investments to operate and maintain Plant 1, including repairs and maintenance, utilities, tooling charges, factory supplies, and real estate / property taxes. (**Confidential Exhibit 59C**, ¶ 16). Below is a photograph of the interior of Plant 1 illustrating equipment used to manufacture the DI Products.

23



*Shoals Plant 1Manufacturing Floor*

83.     In March 2022, Shoals opened a second manufacturing facility in Portland, Tennessee, known as Plant 4, in which the BLA and EV-BLA DI Products are manufactured. Plant 4 also provides warehouse space for the DI Products. Shoals has made substantial investments to lease Plant 4 and in equipment and facilities for the '254 DI Products manufactured in Plant 4. (**Confidential Exhibit 59C**, ¶ 17). Below is an aerial photograph of Plant 4.

24



*Shoals Plant 4*

### 2. *Investment in Employment of Labor and Capital*

84.     As detailed in **Confidential Exhibit 59C**, Shoals' technical and non-technical personnel located in the United States are engaged in activities necessary to design, develop, commercialize, manufacture and support Shoals' DI Products. Shoals' employees include personnel dedicated to the design, manufacture, distribution and installation of the DI Products, as well as engineers engaged in researching, designing, and developing the DI Products. (**Confidential Exhibit 59C**). Other personnel in the United States provide sales and marketing and customer support for the DI Products. (**Confidential Exhibit 59C**). Shoals has made significant investments on labor and employment for engineering, research and development related to the DI Products. **(Confidential Exhibit 59C, ¶ 21).**

85.     From 2015 through 2022, Shoals has made substantial investments for labor and employment for the manufacture of the DI Products, including wages for direct and indirect labor. Shoals has also made additional substantial investments for contract labor, employee benefits, and payroll taxes related to the manufacture of the DI Products. **(Confidential Exhibit 59C, ¶ 23).**

25

32

86.     Shoals' sales process is a highly consultative approach that involves collaborating with developers, engineers, EPCs, subcontractors, and operations and maintenance firms on site design, product selection, value engineering and optimization. Shoals project management team then supports the process after a sale to complete the installation and commissioning. Finally, Shoals' customer care team provides further technical support for the life of the project. From 2015 through 2022, Shoals has made substantial investments on labor and employment for sales and marketing of the DI Products, including wages for sales personnel, and project management/customer care.  **(Confidential Exhibit 59C, ¶ 24)**.

87.     In addition to the labor and employment expense, Shoals has invested in sales & marketing expenses during the period 2015 through 2022 related to trade shows and other activities to promote Shoals' combine-as-you-go system solutions, and the BLA and in-line fuse harnesses as the primary components of those systems. **(Confidential Exhibit 59C, ¶ 25).**

### 3.     *Investment in Engineering, Research, and Development*

88.     In addition, the DI Products were invented, designed, developed, engineered, prototyped, and tested at Shoals' facilities in Portland, Tennessee. (Confidential Exhibit 59C). The named inventor of the Asserted Patents, Dean Solon, was a Shoals employee when he invented the technology that is claimed in the Asserted Patents and that is practiced by the DI Products in Shoals' Portland, Tennessee facilities.

89.     Shoals research and development with respect to the Domestic Industry Products is ongoing. Shoals' team of engineers based in Tennessee is continuously working to design new versions of and make improvements to the DI Products. For example, the BLA harness is now available in several versions, from 2, 3, 4, 5, or 6 drop lines. Shoals' engineers have also developed a version of the BLA harness for use in electric vehicle charging applications. Likewise, Shoals engineers have developed several harnesses employing the patented in-line fuse

26

technology, including high current, dual, and T-junction versions. In addition, the in-line fuse harnesses are now available in several sizes, which have been designed and developed by Shoals' engineers in Tennessee. (**Confidential Exhibit 59C**, ¶ 14).

90.      In addition to expenditures on labor for R&D, Shoals has made substantial investments in the United States on research and development of the DI Products, including certification of the DI Products with UL and other certification organizations. (**Confidential Exhibit 59C**, ¶ 22).

91.      Shoals' significant investments in the research and development have resulted in more than 20 issued U.S. patents. The Asserted Patents are an important part of Shoals' patent portfolio and are a key Shoals asset.

92.      In sum, Shoals' investments in its domestic industry in the patented technology have contributed to Shoals' leadership in the solar industry. Shoals' focus since 2015 has been the promotion of its combine-as-you-go system employing the BLA and in-line fuse technology. Shoals believes that as of the end of 2022, 14 of the top 15 solar EPCs in the U.S. use Shoals' combine-as-you-go system on their projects, and Shoals is in the process of transitioning another 14 EPCs and developers to its system. As noted above, substantially all of Shoals' revenue derives from customers in the U.S.

## IX.   RELATED LITIGATION

93.      The Asserted Patents have not been the subject of any prior proceedings before any court or agency.

94.      Shoals filed a Complaint in the United States District Court for the Southern District of California on May 4, 2023 alleging patent infringement by the Hikam Respondents of the '739 Patent, one of the Asserted Patents in this Investigation. The Hikam Respondents have

not yet responded to the Complaint, and discovery has not yet commenced in the District Court action.

95.     Shoals filed a Complaint in the United States District Court for the Middle District of North Carolina on May 4, 2023 alleging patent infringement of the two Asserted Patents by the Voltage Respondents. The Voltage Respondents have not yet responded to the Complaint, and discovery has not yet commenced in the District Court action.

96.     The unfair acts by the Proposed Respondents, as alleged in this Complaint, or the subject matter thereof, are not and have never been the subject of any other court, tribunal, or agency litigation, domestic or foreign.

## X.     REQUESTED RELIEF

WHEREFORE, by reason of the foregoing, Shoals respectfully requests that the United States International Trade Commission:

A.     Institute an immediate investigation under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Proposed Respondents' violations of that section based on the unlawful importation into the United States, the sale for importation into the United States, and/or the sale within the United States after importation of the Accused Products, and all components thereof, that infringe one or more claims of one or more of the Asserted Patents;

B.     Schedule and conduct a hearing pursuant to Section 337(c) for purposes of: (i) receiving evidence and hearing argument concerning whether there has been a violation of Section 337 by each Proposed Respondents; and (ii) following the hearing, to determine that there has been a violation of Section 337 by each Proposed Respondent;

C.     Issue a permanent limited exclusion order, pursuant to Section 337(d), directed to products manufactured by or on behalf of the Proposed Respondents, their subsidiaries, related

companies, and agents, excluding entry into the United States of the Accused Products that infringe one or more claims of the Asserted Patents;

      D.      Issue a permanent cease-and-desist order, pursuant to Section 337(f), prohibiting the Proposed Respondents, their subsidiaries, related companies, and agents from conducting any of the following activities in the United States in relation to the Accused Products that infringe one or more of the Asserted Patents: importing, marketing, distributing, selling, offering for sale, licensing, advertising, transferring, or otherwise using, and soliciting or aiding and abetting others in such conduct;

      E.      Impose a bond, pursuant to Section 337(j), upon Proposed Respondents who continue to import the Accused Product that infringe one or more claims of the Asserted Patents during the 60-day Presidential review period;

      F.      Issue such other and further relief as the Commission deems just and proper under the law based upon the facts determined by the investigation and the authority of the Commission; and

      G.      Find that public interest is not affected by the remedial orders requested by Shoals and, therefore, decline to delegate this issue for further discovery to the Administrative Law Judge during the violation phase.

May 4, 2023                    Respectfully submitted,

                                    _____

                                    **MASCHOFF BRENNAN**
                                    Kirk Harris
                                      Eric Maschoff
                                      Charles S. Barquist
                                      Saloni Mathur

**STERNE, KESSLER, GOLDSTEIN & FOX,
P.L.L.C.**
Daniel E. Yonan

## VERIFICATION OF COMPLAINT

I, Mehgan Peetz, General Counsel of Complainant Shoals Technologies Group, LLC , for and on behalf of Shoals Technologies Group, LLC, in accordance with Commission Rule 210.4 and 210.12(a), under penalty and perjury, declare that the foregoing is true and correct:

1. I am duly authorized to execute this verification.

2. I have read the Complaint and am familiar with the allegations and statements contained therein.

3. To the best of my knowledge, information, and belief founded after reasonable inquiry, the allegations and statements made in the complaint are well grounded in fact and are warranted by existing law or a good faith argument for the extension, modification, or reversal or existing law.

4. The allegations and other factual contentions in the Complaint have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

5. This document is not being filed for any improper purpose.

Executed on May 3, 2023

_____
Mehgan Peetz

31

38

# Exhibit B


bounded by North Ave., Dolphin St., Franklin St. and Fulton Ave., Baltimore, AD04001374

**NEW YORK**

**Nassau County**

Grace and Thomaston Buildings (Additional Documentation), 11 Middle Neck Rd. and 8 Bond St., Great Neck Plaza, AD78001865

**UTAH**

**Garfield County**

Hole-in-the-Rock Trail (Additional Documentation), From the beginning of BLM Federal Land just south of Escalante, Utah, to the end of BLM Federal Land just west of Bluff, Utah, Escalante vicinity, AD82004792

**WISCONSIN**

**Dane County**

Spooner-Haight Farmstead (Additional Documentation), 2733 Cty. Rd. MM, Fitchburg, AD93001162

*Authority:* Section 60.13 of 36 CFR part 60.

Dated: June 1, 2023.

**Sherry A. Frear,**

*Chief, National Register of Historic Places/ National Historic Landmarks Program.*

[FR Doc. 2023–12347 Filed 6–8–23; 8:45 am]

**BILLING CODE 4312–52–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[USITC SE–23–029]**

**Sunshine Act Meetings**

*Agency Holding the Meeting:* United States International Trade Commission.

**TIME AND DATE:** June 14, 2023 at 2:00 p.m.

**PLACE:** Room 101, 500 E Street SW Washington, DC 20436 Telephone: (202) 205–2000.

**STATUS:** Open to the public.

**MATTERS TO BE CONSIDERED:**

1. *Agendas for future meetings:* none.
2. Minutes.
3. Ratification List.
4. Commission vote on Inv. Nos. 701–TA–682 and 731–TA–1592–1593 (Final)(Freight Rail Couplers and Parts Thereof from China and Mexico). The Commission currently is scheduled to complete and file its determination and views on July 3, 2023.
5. *Outstanding action jackets:* none.

**CONTACT PERSON FOR MORE INFORMATION:** Sharon Bellamy, Acting Supervisory Hearings and Information Officer, 202–205–2000.

The Commission is holding the meeting under the Government in the Sunshine Act, 5 U.S.C. 552(b). In accordance with Commission policy,

subject matter listed above, not disposed of at the scheduled meeting, may be carried over to the agenda of the following meeting.

By order of the Commission.

Issued: June 7, 2023.

**Sharon Bellamy,**

*Acting Supervisory Hearings and Information Officer.*

[FR Doc. 2023–12502 Filed 6–7–23; 4:15 pm]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[Investigation No. 337–TA–1365]**

**Certain Photovoltaic Connectors and Components Thereof; Institution of Investigation**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on May 4, 2023, under section 337 of the Tariff Act of 1930, as amended, on behalf of Shoals Technologies Group, LLC of Portland, Tennessee. A supplement to the complaint was filed on May 12, 2023. The complaint alleges violations of section 337 based upon the importation into the United States, the sale for importation, and the sale within the United States after importation of certain photovoltaic connectors and components thereof by reason of infringement of certain claims of U.S. Patent No. 10,553,739 ('' '739 Patent'') and U.S. Patent No. 10,992,254 ('' '254 Patent''). The complaint further alleges that an industry in the United States exists as required by the applicable Federal Statute. The complainant requests that the Commission institute an investigation and, after the investigation, issue a limited exclusion order and cease and desist orders.

**ADDRESSES:** The complaint, except for any confidential information contained therein, may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov.* For help accessing EDIS, please email *EDIS3Help@usitc.gov.* Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at (202) 205–2000. General information concerning the Commission may also be obtained

by accessing its internet server at *https://www.usitc.gov.*

**FOR FURTHER INFORMATION CONTACT:** Pathenia M. Proctor, The Office of Unfair Import Investigations, (202) 205–2560.

**SUPPLEMENTARY INFORMATION:**

*Authority:* The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2023).

*Scope of Investigation:* Having considered the complaint, the U.S. International Trade Commission, on June 5, 2023, *ordered that*—

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain products identified in paragraph (2) by reason of infringement of one or more of claims 1–13 and 15–18 of the '739 patent and claims 1–15 of the '254 patent, and whether an industry in the United States exists as required by subsection (a)(2) of section 337;

(2) Pursuant to section 210.10(b)(1) of the Commission's Rules of Practice and Procedure, 19 CFR 210.10(b)(1), the plain language description of the accused products or category of accused products, which defines the scope of the investigation, is ''photovoltaic wire harnesses or string harnesses that contain one or more inline fuses, in-line fuse kits, and assemblies for connecting solar panel arrays to an inverter, which assemblies are called lead assemblies or trunk buses, and which may also include one or more in-line fuses'';

(3) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainant is:

Shoals Technologies Group, LLC, 1400 Shoals Way, Portland, Tennessee 37148

(b) The respondents are the following entities alleged to be in violation of section 337, and are the parties upon which the complaint is to be served:

Hikam America, Inc., 3521 Main St. #501, Chula Vista, CA 91911

Hikam Electrónica de México, S.A. de C.V., Carretera A San Luis No. Km. 10.5, Las Californias Industrial Park, Mexicali, Baja California 21394, Mexico.

Hikam Tecnologia de Sinaloa, International Road Guasave, Los Mochis No. Km. 2.5 Industrial Zone, Guasave, Sinaloa 81149, Mexico

Hewtech Philippines Corp., Lot C2–9, Carmelray Industrial Park II, Laguna, 4027 Philippines

Hewtech Philippines Electronics Corp., TECO Industrial Park, Ninoy Aquino Highway, Bundagul Mabalacat, Pampanga, 2010 Philippines

Hewtech (Shenzhen) Electronics Co., Ltd., Block 5 and Block 6, 172 Hengpailing Estate, Wu Tong Shan, Luo Hu District, Shenzhen, 518114 China

Voltage, LLC, 450 Raleigh Rd., Ste. 208, Chapel Hill, NC 27517

Ningbo Voltage Smart Production Co., No. 201 Bldg. 5 (14) Miaofengshan Rd., Beilun District, 57020 Ningbo, China

(c) The Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street SW, Suite 401, Washington, DC 20436; and

(4) For the investigation so instituted, the Chief Administrative Law Judge, U.S. International Trade Commission, shall designate the presiding Administrative Law Judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondents in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 CFR 210.13. Pursuant to 19 CFR 201.16(e) and 210.13(a), as amended in 85 FR 15798 (March 19, 2020), such responses will be considered by the Commission if received not later than 20 days after the date of service by the complainant of the complaint and the notice of investigation. Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of a respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of an exclusion order or a cease and desist order or both directed against the respondent.

By order of the Commission.

Issued: June 5, 2023.

**Lisa Barton,**
*Secretary to the Commission.*

[FR Doc. 2023–12314 Filed 6–8–23; 8:45 am]

**BILLING CODE 7020–02–P**

## DEPARTMENT OF JUSTICE

### Notice of Lodging of Proposed Consent Judgment Under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")

On June 5, 2023, the Department of Justice lodged a proposed Consent Judgment with the United States District Court for the Eastern District of New York in the lawsuit entitled *United States of America* v. *City of New York,* Civil Action No. 1:23–CV–4129.

The United States filed this lawsuit under sections 106(a) and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9606(a) and 9607(a) in connection with the Wolff-Alport Chemical Company Superfund Site (the "Site") in Ridgewood, Queens County, New York. The complaint seeks injunctive relief to remediate radioactive materials on New York City-owned property located near the former Wolff-Alport Chemical Company facility and cost recovery. The Wolff-Alport Chemical Company's operations resulted in the release of residues containing radioactive materials, including thorium and uranium along with their decay products, such as radium. On September 26, 2017, EPA selected a remedy for the Site.

The Consent Judgment requires the City of New York to pay the United States approximately $1.6 million for past costs incurred by the U.S. Environmental Protection Agency related to addressing conditions at the New York City-owned property. The Consent Judgment also requires the City of New York to fund and perform remedial work on New York City-owned property, including the removal of soil and sediments exhibiting levels exceeding the remediation goals in the impacted sewers and beneath the roadway and sidewalks.

The publication of this notice opens a period for public comment on the proposed Consent Judgment. Comments should be addressed to the Assistant Attorney General, Environment and Natural Resources Division, Environmental Enforcement Section, and should refer to *United States of America* v. *City of New York,* Civil Action No. 1:23–CV–4129, D.J. Ref. No. 90–11–3–11741/1. All comments must be submitted no later than thirty (30) days after the publication date of this notice. Comments may be submitted either by email or by mail:

| To submit comments: | Send them to: |
|---|---|
| By email ....... | *pubcomment-ees.enrd@ usdoj.gov.* |
| By mail ......... | Assistant Attorney General, U.S. DOJ—ENRD, P.O. Box 7611, Washington, DC 20044–7611. |

During the public comment period, the Consent Judgment may be examined and downloaded at this Justice Department website: *https:// www.justice.gov/enrd/consent-decrees.* We will provide a paper copy of the Consent Judgment upon written request and payment of reproduction costs. Please mail your request and payment to: Consent Decree Library, U.S. DOJ— ENRD, P.O. Box 7611, Washington, DC 20044–7611.

Please enclose a check or money order for $93.50 (25 cents per page reproduction cost) for the Consent Judgment with appendix, or $10.00 for the Consent Judgment without the appendix, payable to the United States Treasury.

**Henry Friedman,**
*Assistant Section Chief, Environmental Enforcement Section, Environment and Natural Resources Division.*

[FR Doc. 2023–12294 Filed 6–8–23; 8:45 am]

**BILLING CODE 4410–15–P**

## DEPARTMENT OF LABOR

### Agency Information Collection Activities; Submission for OMB Review; Comment Request; Benefits Timeliness and Quality Review System

**ACTION:** Notice of availability; request for comments.

**SUMMARY:** The Department of Labor (DOL) is submitting this Employment and Training Administration (ETA)-sponsored information collection request (ICR) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (PRA). Public comments on the ICR are invited.

**DATES:** The OMB will consider all written comments that the agency receives on or before July 10, 2023.

**ADDRESSES:** Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this